UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| PEGGY S. FONT, | : Case No. 3:18-cv-230 |
| Plaintiff, | : |
| vs. | : District Judge Thomas M. Rose |
| | : Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Peggy S. Font brings this case challenging the Social Security Administration's denial of her application for period of disability and Disability Insurance Benefits. She applied for benefits on August 1, 2012, asserting that she could no longer work a substantial paid job. After a hearing, Administrative Law Judge (ALJ) Edmund E. Giorgione concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and she filed a previous action in the United States District Court for the Northern District of Ohio. The Court granted the Parties' Joint Motion for Remand. *Font v. Colvin*, 3:15cv1902 (N.D. Ohio

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

May 3, 2016). Upon remand, ALJ Melissa Warner held a hearing and concluded that Plaintiff was not under disability and thus, was not eligible for benefits.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Warner's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since March 14, 2012. She was fifty-two years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(d). She has at least a high school education. *See* 20 C.F.R. § 404.1564(b)(2).

### A. Plaintiff's Testimony

At the beginning of the hearing, ALJ Warner instructed Plaintiff to focus her testimony on the time period between March of 2012 and the end of 2014. Plaintiff testified that she stopped working as a nursing assistant in 2012 because she was not able to do the heavy lifting the job required. (Doc. #5, *PageID* #1971). However, even without the lifting requirement, she could not have worked any longer because her back prevents her from walking very much, sitting, or standing. *Id*.

Plaintiff has pain in her right hip and right knee. *Id.* at 1985. Her doctor gave her a cortisone shot in the knee and told her "he feels like [she is] going to need a knee

2

replacement." *Id*. Plaintiff also has pain across her shoulders and neck. *Id.* at 1975. If she reaches overhead, it pulls her shoulders and neck. *Id*.

Between 2012 and 2014, Plaintiff took pain medications (although she could not remember the names). *Id.* at 1978. It helped her rest. *Id.* She also took Ambien to help her sleep. *Id.* She usually slept six hours at night. *Id*. Further, Plaintiff also took frequent naps to ease her pain. *Id.* at 1977. She was most comfortable lying down in bed on either side with her leg over a body pillow to help with her back pain. *Id.* at 1973. She changed positions every twenty minutes. *Id.* at 1974. She usually slept for four to six hours during the day. *Id.* at 1978.

She is epileptic and has seizures. *Id.* at 1969. She was in the hospital for five days as a result of her seizures. *Id*. When she woke up, she did not know anything or anyone. *Id*. She eventually came around but still lost a lot of her memory and concentration. *Id*. At the time of the hearing, she was having seizures once a month. *Id.* at 1977. Between 2012 and the time of the hearing, she also had episodes twice a month where she "just [goes] black and can't talk or anything to anyone around [her]." *Id*. Each episode lasts about ten minutes and afterwards, she feels weak and needs to rest for an hour. *Id.* at 1982. Plaintiff aslo had tremors in her hands that make it difficult for her to pick up small things and write. *Id*.

Plaintiff has problems with her blood pressure. *Id.* at 1981. First, it was too high and she needed medication to lower it. *Id.* But then it dropped too low and she had to get a pacemaker. *Id.* When her blood pressure gets too high, she feels tired and week. *Id.* at

1983. Between 2012 and 2014, Plaintiff had a couple episodes of chest pain. *Id*. She also experiences shortness of breath—even walking from one room to the next. *Id*.

Plaintiff has diabetes and when her blood sugar is high, she feels "very tired and very hot." *Id.* at 1983. Her face also gets flushed and she has to lie down. *Id*.

Plaintiff struggles with depression and is not comfortable with people. *Id.* at 1976. Although she used to be a very social person, towards the end of her employment, her personality started changing. *Id.* at 1975. She began seeing a psychologist, Elizabeth Adams, in 2011 or 2012. *Id.* at 1979. She also began taking Cymbalta. *Id.* at 1979. Her depression makes it difficult for her to concentrate. *Id.* at 1980.

During the time in question, Plaintiff energy level was poor. *Id.* at 1982. She had daily headaches that lasted "maybe a couple hours." *Id.* at 1984. Additionally, Plaintiff's medications made her extremely tired—so much so that she had a hard time functioning because she could not stay awake long enough. *Id*.

Between 2012 and 2014, she could lift or carry a gallon of milk in each hand but not very far. *Id.* at 1974. She could walk for about ten minutes before needing to sit down for ten to fifteen minutes. *Id.* at 1972. She could stand for ten minutes but that was difficult. *Id*. She was able to bend and touch her knees but, because of her pain, could not touch the floor. *Id.* at 1974.

During the relevant time, Plaintiff lived with her husband. *Id.* at 1969. She had her driver's license but did not drive often because she had trouble concentrating. *Id*. She saw her daughter once a week. *Id.* at 1981. Plaintiff did not do any household chores. *Id.* at 1980. Her husband took care of everything, including grocery shopping

and cooking. *Id.* If her husband was not home, she was able to make herself a sandwich. *Id.* Although she was able to take care of her own personal needs, after she spent five days in the hospital, she was very weak could not take a shower or attend to her personal needs. *Id.* She went to physical therapy and eventually regained her strength. *Id.* at 1980-81.

B.      **Treating Physician Opinion**

Plaintiff's treating physician, Robert C. Adams, M.D., completed a multiple impairment questionnaire on December 11, 2013. He diagnosed spinal stenosis – lumbar radiculopathy, chronic depression, diabetes, hypertension, PACER–sick sinus, seizure disorder, and sleep apnea. *Id.* at 1634. His clinical findings include flat affect, decreased back range of motion, unsteady gait, and obesity (her weight has gone up 265 pounds). *Id.* Additionally, she has symptoms including fatigue; shortness of breath with exertion; paresthesia in her hands and feet; and hand tremors. *Id.* at 1635. Plaintiff has sharp, intermittent back and right leg pain that is worse with standing, prolonged sitting, or bending. *Id.* at 1635-36. On a scale from one to ten, her pain is eight—moderately severe. *Id.* at 1636. Her fatigue is at nine—severe. *Id.* Dr. Adams opined that her prognosis is poor. *Id.* at 1634.

Dr. Adams opined that in an eight-hour day, Plaintiff could sit for two hours and stand/walk for up to one hour. *Id.* at 1636. She should not sit continuously in a work setting and, instead, must get up and move around every hour for thirty minutes before sitting down again. *Id.* at 1637. She is unable to lift or carry any weight. *Id.* Her ability to grasp, turn, or twist objects; use her fingers/hands for fine manipulations; or use her

5

arms for reaching is moderately limited. *Id.* at 1637-38. She cannot push, pull, kneel, bend, or stoop. *Id.* at 1640. She must avoid temperature extremes and heights. *Id*. She cannot keep her neck in a constant position on a sustained basis. *Id.* at 1638-39.

Dr. Adams opined that Plaintiff's symptoms would likely increase if she were placed in a competitive work environment. *Id.* at 1638. She is incapable of even "low stress" work. *Id.* at 1639. Plaintiff's pain, fatigue and other symptoms would interfere with her attention and concentration constantly. *Id*. She would frequently need to take unscheduled breaks at unpredictable intervals during an-eight-hour workday. *Id*. She is likely to be absent from work more than three times a month as a result of her impairments or treatment. *Id.* at 1640

### III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399,

6

406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Warner to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since March 14, 2012.

Step 2: She has the severe impairments of a seizure disorder; history of multilevel lumbar and thoracic spine disc protrusions with nerve root effect; L5-S1 degenerative disc disease; obesity; dysthymic disorder; anxiety disorder; personality disorder; early diabetic peripheral neuropathy; and bilateral hip, left ankle, and right shoulder mild osteoarthritis.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except: work where the tasks can be done in either a seated or standing position as needed with sitting, standing or walking for four of eight hours each; occasional climbing stairs, balancing, stooping, kneeling, crouching and crawling; no climbing ladders, ropes and scaffolds; occasional overhead reaching; occasional exposure to temperature extremes; and no exposure to obvious hazards. [Plaintiff] can also: understand, carry out and remember simple instructions where the pace of productivity is not dictated by an external source over which the claimant has no control such as an assembly line or conveyor belt; make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes; and respond approp1iately to supervision but not with the general public, and occasional contact with coworkers where there is no working in team or tandem with coworkers."

> Step 4: She is unable to perform any of her past relevant work.
>
> Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 1935-50). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 1950.

## V. Discussion

Plaintiff contends that the ALJ failed to properly evaluate the medical opinion evidence and her testimony. The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

9

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

After summarizing the opinion of Plaintiff's treating physician, Dr. Adams, the ALJ assigned it little weight. She gave a very brief explanation: "the totality of the medical evidence of record fails to support limitations of such severity, as his opinion is dramatically more severe than is supported by the medical evidence of record as discussed above." (Doc. #5, *PageID* #1947).

Although the ALJ refers to Dr. Adams as Plaintiff's treating physician, her evaluation of his opinion does not acknowledge or meaningfully consider whether it is entitled to controlling weight under the treating physician rule. At best, the ALJ considered the first condition of the treating physician rule—whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. However, the ALJ erred to the extent that she required Dr. Adams' opinion be supported by "the totality of the medical evidence." In doing so, she required more than the

Regulations: "For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be *fully* supported by such evidence." Soc. Sec. R. 96-2p, 1996 WL 374188 (July 2, 1996) (emphasis added).

Moreover, the ALJ erred in failing to address any of the factors. "Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. *Id*. at *4.

Turning to the ALJ's one reason for rejecting Dr. Adams' opinion, Plaintiff asserts that the ALJ's failure to explain what medical evidence contradicts Dr. Adams' limitations constitutes error. The Commissioner correctly acknowledges that "the ALJ's decision was not a model of a [sic] clarity …" and "[she] could have better articulated his findings." (Doc. #9, *PageID* #s 2659-60). However, the Commissioner maintains, "the court can trace the path of the ALJ's reasoning by looking at [her] discussion of the objective medical evidence." *Id.* at 2660 (citing Doc. #5, *PageID* #s 1943-46). According to him, "throughout the decision, the ALJ explained that the examinations showed mostly normal findings and the diagnostic tests were either negative or had mild findings." *Id.* at 2659.

The Commissioner's argument lacks merit. "'[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; *there must be some effort to* identify the specific discrepancies and to *explain why it is the treating physician's conclusion that gets the short end of the stick.*'" *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 753 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010)) ("'The ALJ's rationale for discounting that opinion [of primary-care treating physician Angerman] was expressed simply as 'the testimony of [Medical Expert] Dr. Nusbaum, which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight-hour workday, is more consistent with the objective clinical findings,' and 'there is no basis for Dr. Angerman's conclusion that the claimant can stand/walk for only one hour in a day.' This is not 'sufficiently specific' to meet the requirements of the rule on its face, inasmuch as it neither identifies the 'objective clinical findings' at issue nor discusses their inconsistency with Dr. Angerman's opinion.'").

In the present case, the ALJ does not identify a single piece of evidence in support of her reason for rejecting Dr. Adams' opinion. Although the Commissioner directs attention to the ALJ's discussion of the medical evidence, her discussion of Plaintiff's mental and physical impairments does not explain what evidence fails to support Dr. Adams' opinion. Indeed, much of the evidence appears to be consistent with Dr. Adams' opinion. For instance, Dr. Adams noted that Plaintiff has a decreased range of motion in her back. (Doc. #5, *PageID* #1634). The ALJ similarly noted that Plaintiff's lumbar range of motion was moderately reduced during a consultation. *Id.* at 1943. Dr. Adams

12

opined that Plaintiff was unable to lift and reach because she has a tremor and numbness. *Id.* at 1637. Likewise, the ALJ observed that Plaintiff reported numbness and a tremor in her hand and an EMG and nerve-conduction study revealed mild neuropathy consistent with early diabetic peripheral polyneuropathy. *Id.* at 1944-45.

Indeed, the ALJ's discussion reveals the ebb and flow of Plaintiff's varied symptoms. For instance, in November 2011, Plaintiff was diagnosed with epilepsy and prescribed Depakote. *Id.* at 1943. Initially, it was very effective in stopping her seizures. *Id.* But, more than a year later, in March 2013, Plaintiff indicated that her seizure involved myoclonic jerks. *Id.* at 1945. Her medication was adjusted and she stopped having seizures again. *Id.* Unfortunately, less than one year later, in February 2014, she again reported seizure activity, including hospitalization due to seizure activity. *Id.* at 1946. This illustrates the importance of treating physicians' unique longitudinal perspective. *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

The Commissioner asserts that Dr. Adams' opinion is patently deficient and thus, even if the ALJ erred in weighing his opinion, the Court should affirm. (Doc. #9, *PageID* #2661). In support, the Commissioner points to a few inconsistencies between the record and Dr. Adams' opinion. The Commissioner's argument lacks merit. Dr. Adams

completed an eight-page questionnaire concerning Plaintiff's impairments. (Doc. #5, *PageID* #s 1634-41). He identified his clinical findings as well as Plaintiff's symptoms. He generally explained his responses when asked. It is certainly not "so patently deficient that the Commissioner could not possibly credit it …." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *see Wilson*, 378 F.3d at 547 ("if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal.") (citation omitted).

In sum, the ALJ failed to provide good reasons, supported by substantial evidence, for discounting Dr. Adam's opinion. "Because the reason-giving requirement exists to 'ensur[e] that each denied claimant receives fair process,' we have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting *Rogers*, 486 F.3d at 243); *see Cole*, 661 F.3d at 939 ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (quoting *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir.2009)).

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[2]

**B.     Outcome**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

---

[2] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

15

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Peggy S. Font was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.

September 10, 2019

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).